UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JOHN DOE,

                      **Plaintiff,**

        v.                                         5:17-CV-1298
                                                            (FJS/ATB)

COLGATE UNIVERSITY,

                      **Defendant.**

_____

**APPEARANCES**                                    **OF COUNSEL**

**NESENOFF & MILTENBERG, LLP**         **ANDREW MILTENBERG, ESQ.**
363 Seventh Avenue – 5th Floor            **STUART BERNSTEIN, ESQ.**
New York, New York 10001                 **TARA J. DAVIS, ESQ.**
Attorneys for Plaintiff                          **NICHOLAS EVAN LEWIS, ESQ.**

**BOND, SCHOENECK & KING, PLLC**     **LAURA H. HARSHBARGER, ESQ.**
One Lincoln Center
Syracuse, New York 13202
Attorneys for Defendant

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION[1]**

In a Memorandum-Decision and Order dated April 30, 2020, this Court granted Defendant's motion for summary judgment with respect to Plaintiff's third and fourth causes of action, interpreted as violations of the breach of the covenant of good faith and fair dealing and equitable estoppel, and granted Defendant's motion to preclude Plaintiff's expert, Dr. Stan V. Smith, Ph.D., from testifying about hedonic damages. *See* Dkt. No. 58 ("April 30th Order") at 20. The Court denied Defendant's motion for summary judgment with respect to Plaintiff's

---

[1] **The Court presumes that the parties are familiar with the facts of the case as described in its April 30th Order.** *See* **Dkt. No. 58 at 2-5.**

first cause of action for violation of Title IX of 20 U.S.C. § 1681 *et seq.*, under the theories of erroneous outcome and selective enforcement, and parallel fifth cause of action for violations of the New York States Human Rights Law. *See id.* The Court also denied Defendant's motion for summary judgment with respect to Plaintiff's second cause of action for breach of contract. *See id.*

Pending before the Court is Defendant's motion for reconsideration, in which Defendant requests that the Court reconsider its denial of summary judgment with respect to Plaintiff's first, second, and fifth causes of action. *See* Dkt. No. 59.

## II. DISCUSSION

### A. Legal standard governing motions for reconsideration

"In this district, reconsideration of an order entered by the Court is appropriate upon a showing of '(1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice.'" *Agee v. Mitchell*, No. 9:19-CV-0057 (BKS/ATB), 2019 U.S. Dist. LEXIS 214930, *2 (Dec. 13, 2019) (quoting *In re C-TC 9th Ave. P'ship*, 182 B.R. 1, 3 (N.D.N.Y. 1995)) (other citations omitted). "To qualify for reconsideration, '[t]he moving party [must] point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *Id.* at *3 (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). "Motions for reconsideration are not vehicles in which a party may get two bites at the apple, and any litigant considering bringing a motion for reconsideration must evaluate whether what may seem to be a clear error of law is in fact simply a point of disagreement between the Court and the litigant." *In re C-TC 9th Ave. P'ship*, 182 B.R. 1, 3 (N.D.N.Y. 1995) (citation omitted).

### B. Plaintiff's gender bias claims

In support of its motion, Defendant argues that the Court committed clear error in finding that Plaintiff had raised an issue of fact about whether his investigation, hearing, and expulsion were the result of gender bias. *See generally* Dkt. No. 59-2, Def's Memorandum in Support, at 6-14. However, the Court finds that Defendant does not meet the "strict and demanding" standard for reconsideration set out above. *See Major v. Lamanna*, No. 9:18-CV-0418 (MAD/DEP), 2019 U.S. Dist. LEXIS 77582, *9 (N.D.N.Y. May 8, 2019). Defendant has not pointed to any legal or factual material that the Court overlooked. *See id.* Rather, in making its motion, Defendant seeks to re-litigate whether a factfinder could reasonably find that gender bias led to the Hearing Panel's finding Plaintiff responsible for non-consensual sexual intercourse and his ultimate expulsion. Simply because Defendant disagrees with the Court's finding does not mean that the Court committed clear error or that its finding will create a manifest injustice.

In his complaint, Plaintiff alleged that Defendant violated his rights under Title IX and the New York State Human Rights Law by wrongly finding that he had committed the offense ("erroneous outcome theory") and for penalizing Plaintiff more severely than it would have penalized a female for a comparable offense ("selective enforcement theory"). *See* Dkt. No. 58 at 6; *see also* Dkt. No. 1, Compl., at ¶¶ 5-7. To succeed under an "erroneous outcome" theory at the summary judgment stage, a plaintiff "must demonstrate (1) 'articulable doubt [as to] the accuracy of the outcome of the disciplinary proceeding,' and (2) that 'gender bias was a motivating factor behind the erroneous finding.'" *Doe v. Colgate Univ.*, 760 F. App'x 22, 30 (2d Cir. 2019) (summary order), *cert. denied*, 139 S. Ct. 2765 (2019) (quoting [*Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)]).

In its April 30th Order, the Court found that Plaintiff had raised an issue of fact with regard to his Title IX claim based on the theory of erroneous outcome because "a reasonable factfinder could find that Brogan was biased against Plaintiff when she entangled herself in Dougherty's criminal investigation, failed to investigate inconsistencies in Roe's account, and did not question Roe about Plaintiff's potentially accurate account of the incident." *See* Dkt. No. 58 at 10.  Here, Defendant argues, Brogan's conduct in investigating Roe's claims and her interactions with Dougherty were compliant with Defendant's protocol; and, thus, they could not lead to an inference of gender bias. *See generally* Dkt. No. 59-2 at 6-12.  Defendant does not argue that the Court applied the wrong law; it simply disagrees with the Court's findings about what a factfinder could reasonably believe.

As Plaintiff correctly notes, it is up to the factfinder – not the Court at summary judgment – to assess Brogan's credibility to ultimately determine whether she acted with gender bias in investigating Plaintiff.  *See generally* Dkt. No. 60, Pl's Memorandum in Response, at 4, 6.  Plaintiff alleged numerous facts that called Brogan's supposedly impartial investigation into question, which the Court thoroughly discussed in its April 30th Order.  *See* Dkt. No. 58 at 6-10. Looking at the totality of the facts and circumstances, Plaintiff plausibly established a causal connection between gender bias and the outcome of his disciplinary proceeding so that a factfinder could find in his favor.  *See Prasad v. Cornell Univ.*, No. 5:15-CV-322, 2016 U.S. Dist. LEXIS 161297, *56 (N.D.N.Y. Feb. 24, 2016).  Thus, the Court denies Defendant's motion for reconsideration with respect to Plaintiff's Title IX claim based on the theory of erroneous outcome.

Additionally, "'[t]o support a claim of selective enforcement, [a male plaintiff] must demonstrate that a female was in circumstances sufficiently similar to his own and was treated

more favorably by the University.'" *Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 480 (S.D.N.Y. 2015) (quotation omitted). With regard to this claim, Plaintiff argued that a female respondent was a direct comparator because both had been found responsible for "Sexual Assault" under the Equity Grievance Policy's ("EGP") definition, but Plaintiff was expelled, and the female respondent was suspended for two years. *See* Dkt. No. 58 at 13. Thus, the Court found that "Plaintiff ha[d] raised a genuine issue of material fact as to whether Defendant treated female students who were accused of sexual assault more favorably than male students under similar circumstances[.]" *Id.*

Defendant now claims that the Court's finding would amount to a manifest injustice to penalize all forms of sexual assault equally instead of punishing penetrative offenses more severely than non-penetrative offenses. *See* Dkt. No. 59-2 at 60. However, this argument interprets the Court's holding too broadly. The Court did not find that all students who commit any form of sexual assault should be expelled. The Court merely found that Plaintiff had asserted sufficient facts to raise a question about whether a female student would receive the same punishment as Plaintiff, a male student, for comparable conduct.

Those facts include that Dr. Mark Thompson, who served on Plaintiff's first EGP Appeal Panel, specifically stated that "[a] finding of responsibility for sexual assault is a significant offense" and one that "warranted separation from the institution." *See* Dkt. No. 58 at 12 (quoting Dkt. No. 55-21, Thompson Dep., at 39). Yet, Plaintiff has shown that a female respondent who was found responsible for sexual harassment and non-consensual sexual contact – considered "sexual assault" under the EGP's definition – did not warrant permanent separation from the institution. *See* Dkt. No. 44-9, Ex. C, Sexual Misconduct R., at 46. Furthermore, as Plaintiff notes, the Hearing Outcome Letter indicated that Plaintiff's expulsion

was warranted, in part, due to "identical sanctions in other EGP cases involving nonconsensual sexual intercourse consisting of *penile vaginal penetration*[,]" a violation of which a female could never be found responsible. *See* Dkt. No. 60 at 16 (quoting Dkt. No. 55-5, Ex. D, Hearing Outcome Letter, at 5).

This finding does not amount to a manifest injustice. Plaintiff has pointed to evidence that Defendant may not have punished a similarly situated female to the same extent that it punished Plaintiff for comparable conduct. Thus, the Court simply held that a factfinder could find that Defendant discriminated against Plaintiff—one of its male students—because of his gender, in violation of Title IX. Accordingly, the Court denies Defendant's motion for reconsideration on this issue.

### C. Plaintiff's breach of contract claim

In its April 30th Order, the Court denied Defendant's motion for summary judgment with regard to Plaintiff's fifth cause of action for breach of contract having found that "there are genuine disputes of material fact as to whether Defendant acted appropriately and substantially complied with its contractual promises in investigating, adjudicating, and sanctioning Plaintiff…" *See* Dkt. No. 58 at 15. Specifically, the Court noted that Defendant had contractually promised its students "the right to be free from disciplinary sanction except by due process, with avenues of resource available when a student claims to have been subjected to prejudicial, discriminatory, or capricious treatment." *Id.* at 14 (quoting Dkt. No. 55, Pl's Memorandum in Response to Def's Mot. Summ. J., at 30-31). Furthermore, as Plaintiff notes, the Statement of Rights for All Students guarantees each student the right to "participate in a process that is fair, impartial and provides adequate notice and meaningful opportunity to be heard." *See* Dkt. No. 60 at 18 (quoting Dkt. No. 55-11, Ex. J, EGP, at § IX).

Defendant asks the Court to reconsider its finding, arguing that Plaintiff's breach of contract claim cannot be based on the fact that Defendant's employees acted arbitrarily or that Brogan was not impartial in conducting her investigation.  *See* Dkt. No. 59-2 at 15.  For support, Defendant relies on caselaw stating, "'[t]o the extent [the p]laintiff intends his breach of contract claim to be a reexamination of the result or penalty of his disciplinary hearing because [the defendant] acted arbitrarily during the proceeding …'" a New York Civil Practice Law and Rules Article 78 proceeding, not a breach of contract claim, is appropriate.  *See* Dkt. No. 59-2 at 15 (quoting *Prasad*, 2016 U.S. Dist. LEXIS 161297, at *64).  However, the *Prasad* court noted immediately thereafter, "[t]o the extent [the p]laintiff intends his breach of contract claim to be for the recovery of monetary damages because a specific agreement was breached, repleading *may* be allowed."  *Prasad,* 2016 U.S. Dist. LEXIS 161297, at *64 (footnote omitted).  In this case, Plaintiff does not ask the Court to reexamine the result or penalty of his disciplinary hearing because Defendant allegedly acted arbitrarily during the proceeding.  Instead, "on the second cause of action for breach of contract," Plaintiff requests "a judgment awarding [him] damages in an amount to be determined at trial, including, without limitation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects[.]"  *See* Dkt. No. 1 at 51.

Defendant further argues that Plaintiff cannot show that it breached a "specific agreement," contending that the above-quoted Handbook provisions are "types of general statements of policy which New York law dictates cannot form the basis of a viable contract claim."  *Noakes v. Syracuse Univ.*, 369 F. Supp. 3d 397, 419 (N.D.N.Y. 2019) (citing *Gally v. Columbia University*, 22 F. Supp. 2d 199, 207 (S.D.N.Y. 1998); *Nungesser v. Columbia Univ.*, 244 F. Supp. 3d 345, 373 (S.D.N.Y. 2017)) (footnote omitted).  The Court finds, however, that

Plaintiff clearly alleged specific breaches in Defendant's investigating, adjudicating, and sanctioning him in response to Roe's claim. *See* Dkt. No. 60 at 18 (citing Dkt. No. 55-1, Ex. J, at §§ I-III, V, IX; Statement of Rights for Respondents at § IX). For example, the EGP guarantees that "any person assigned to a role pursuant to [the EGP who] is aware of any relationship, fact, circumstance or occurrence that he or she believes creates or constitutes a conflict of interest that would render him or her incapable of performing the role in an impartial manner … shall identify the conflict of interest to the associate provost for equity and diversity at the earliest practicable time…" *See* Dkt. No. 55-11, Ex. J, at § IX. Plaintiff has alleged several facts about Brogan's investigation that, when taken together, could lead a factfinder to conclude that Brogan was incapable of performing the investigation in an impartial manner and that she did not seek removal from the investigation. *See generally* Dkt. No. 1 at ¶¶ 148-170. Thus, unlike the plaintiff in *Noakes*, Plaintiff's breach of contract claim relies on specific contractual promises with concrete evidence that could lead a reasonable factfinder to believe that those promises had been breached.

Accordingly, the Court did not commit clear error in holding that a factfinder could find that Defendant breached its contractual promises to Plaintiff; and, therefore, the Court denies Defendant's motion for reconsideration with respect to this claim.

### III. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion for reconsideration, *see* Dkt. No. 59, is **DENIED**.

**IT IS SO ORDERED.**

Dated: June 23, 2020
    Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge